UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK COLSTON,

               Plaintiff,                    Case No. 2:17-cv-11649
                                             District Judge Nancy G. Edmunds
v.                                       Magistrate Judge Anthony P. Patti

BOSTON MARKET
CORPORATION and
SARAH PRINZI,

               Defendants.

_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO DISMISS (DE 13)

## I.    RECOMMENDATION

The Court should **GRANT** Defendants' motion to dismiss (DE 13) and: (a) **DISMISS** Plaintiff's medical payment and workers compensation claims **without prejudice** to their being pursued in the proper tribunal; (b) **DISMISS** all other claims **with prejudice**.

## II.    REPORT

### A.    Introduction and Prior Litigation

The Court is already quite familiar with the factual allegations made in this case. This is the third lawsuit filed by Mark Colston since January 10, 2017, all involving his work at Boston Market, two robberies from which he fled, injuries

suffered as a result of the robberies or flight therefrom, and claims of being

unfairly treated by his employer or its worker compensation insurance carrier

thereafter. (See Case Nos. 17-10076 and 17-10084, both assigned to Edmunds, J.

and Patti, M.J.)  Much of what follows may seem familiar to the Court. Although

Defendants assert that the current pleading is essentially identical to the previous

ones, this is not quite accurate; nevertheless, to a very large extent, Plaintiff re-

alleges the facts pleaded in his two prior suits. Rather than reinvent the wheel, I

will repeat my prior summary of those facts (with adjustments as necessary) and,

where applicable, my prior analysis of any identical legal issues. I will also make

reference to the procedural history of the two prior lawsuits, where pertinent.

### B.    Allegations Made in the Instant Complaint

#### 1.    Factual Allegations

Plaintiff, Mark Colston, who is proceeding without the assistance of counsel,

filed his complaint and application to proceed *in forma pauperis* on May 24, 2017.

(DEs 1 & 2.)  The Court granted his application.  (DE 19.)  For the purposes of this

motion to dismiss, I will accept the allegations in Plaintiff's complaint as true.

Plaintiff was hired by Defendant, Boston Market Corporation ("Boston

Market") in October 2013 to work as a dishwasher.  The Boston Market location

was robbed at gunpoint on two occasions while Plaintiff was at work: once in

October 2014, and again on August 15, 2016.  While attempting to escape from the

2

August 15, 2016 robbery, Plaintiff was "pushed by a fellow employee and fell at the entrance of the back door."  (DE 1 at ¶¶ 1-2.)[1]  After he was able to stand up and begin running away again, he saw the robber with a gun in his hand.  He ultimately escaped to a nearby drug store and someone was able to call for help.  (*Id.* at ¶ 2.)

One day later, Plaintiff sent a letter to Boston Market "explaining he had been *injured in the robbery* and needed immediate medical attention."  (*Id.* at ¶ 3) (emphasis added).  He continued to seek help from Boston Market until he was contacted on December 21, 2016 by Defendant Sarah Prinzi, who identified herself as a representative of Boston Market and said that his messages had reached her through the company's complaint hotline.  (*Id.* at ¶ 5.)  That same day, Plaintiff complained to Ms. Prinzi that he had not been placed back on the work schedule "after he informed management that he was *injured during the robbery* and he provided proof that he was injured." (*Id.* at ¶ 11) (emphasis added).[2]  Ms. Prinzi

---

[1] The Complaint contains two paragraphs which are each labeled as paragraph #1. I will treat them as a single paragraph and ignore the spacing between them.

[2] Plaintiff attaches as Exhibit B to his motion response an extremely sparse September 22, 2017 "Medical Absence" note from Roseville Urgent Care, which simply states "No prolonged standing or excessive walking for 2 weeks." Defendants point out that in light of this note Plaintiff would have been expected to return to work in early October, and that he was subsequently terminated for failure to report, for which they submit an affidavit in support. None of these facts necessarily come into play in deciding this motion, even if I were inclined to look that far beyond the pleadings.

informed him that "she was going on vacation until January 2, 2016 [sic][,]" that

Boston Market would pay for his medical treatment, and that "the workman[s']

compensation adjuster would be responsible for paying all his medical bills." (*Id.*

at ¶ 5.)  He spoke with the workers compensation adjuster, Dolores Graham of

Gallagher Bassett Services, on December 23, 2016.  She told him "that they were

going to dispute [his] claim that he was injured as a result of the robbery." (*Id.* at ¶

6.)  Plaintiff takes issue with this and alleges that he "is in counseling with a

psychologist and she has diagnosed him with **PTSD** *as a result of the robbery* [of]

August 15, 2016." (*Id.* at ¶ 9) (bold type in original; italics added).[3]

    In early January 2017, Plaintiff had a series of frustrating communications

with Ms. Graham and Defendant Prinzi regarding his need for treatment and "the

processing of his working [sic] compensation file."  (*Id.* at ¶¶ 7-9.) On January 26,

2017, Plaintiff told Defendant Prinzi that he needed additional counseling and that

Boston Market would need to pay for it; however, she informed him that he had

been "terminated on November 1, 2016 for not going to work" and that he would

not be afforded company benefits. (*Id.* at ¶¶ 10-11.)  She explained that "after a

person is not place[d] on [the] schedule for a certain time frame the computer

_____

[3] Plaintiff purports to attach "Exhibit B," an email in support of this diagnosis, but
it does not appear on the docket. Paragraph 9 of the complaint ends with a
fragment of a sentence, which reads, in its entirety, "On Jan 6, 2017, 11:14 AM,
Mark[.]"  (DE 1 at ¶ 9.)

terminates them." (*Id.* at ¶ 11.)  Plaintiff, in turn, "asked Defendant Sarah Prinzi could she override the computer system and reinstate him." Ms. Prinzi said that "she could override the computer; however, she refused to reinstate Plaintiff's employment." (*Id.*) (spelling errors and punctuation corrected).  Plaintiff continued to argue with Ms. Prinzi, pointing out to her that "the medical condition he is suffering … [is] *a result of the robbery*" and that "she could override the computer" and "reinstate" his employment, although she refused. (*Id.*) (emphasis added).

### 2.  Legal Claims and Demands for Relief

Plaintiff asks the Court to order Defendants to pay for his medical treatment, in addition to compensatory and punitive damages of $10 million. (*Id.* at 9.) Although the "Preliminary Statement," with which his complaint begins, makes vague references to "injunctive relief, damages and punitive damages pursuant to rights secured by the Michigan constitution and the constitution of the United States and those secured by the eighth amendment cruel and unusual punishment and the fourteenth amendment due process and equal protection of the law[,]" Plaintiff more specifically identifies "Title VII of the Civil Rights Act of 1964, Title I of the Americans With Disabilities Act and Retaliation."  After the lengthy recitation of his attempts to have his worker compensation claim adjusted (*id.* ¶¶ 3-10), the best information for identifying Plaintiff's intended claims and theories of

liability is found in paragraph 12 of the complaint, which reads as follows in its entirety, with my own emphases:

> On February 2, 2017[,] Plaintiff filed a complaint against Defendants. Plaintiff stated in part the following in his EEOC complaint[,] "I believe that I [was] *discharged due to my race, Black, and in retaliation for complaining about my race, in violation of Title VII of the Civil Rights Act of 1964*, as amended. I also believe that I was *denied medical benefits due to my disability*, and *discharged for complaining, in violation of Title I of the Americans with Disability [sic] Act of 1990*, as amended."

(DE 1, at ¶ 12.)  A copy of the EEOC charge, from which this quote was taken and which was filed with the Michigan Department of Civil Rights, is attached to his complaint as Exhibit A. (*Id*. at 10.)  Finally, the complaint asserts that "[t]he EEOC did issue Plaintiff a right to sue letter."  However, that right to sue letter is not attached, and the complaint itself tells us nothing about when it was issued or received. (*Id.*, ¶ 13.)

Plaintiff is "the master of his complaint," and thus, the Court looks to the pleadings to define his claims. *Roddy v. Grand Trunk W. R.R., Inc.*, 395 F.3d 318, 322 (6th Cir. 2005).  Based upon the complaint as a whole, and paragraph 12 in particular, I ascertained that Plaintiff is alleging or attempting to allege three causes of action, namely: (1) a Title VII claim for racial discrimination, with sub-theories of discharge due to race and retaliatory discharge for complaining about racial discrimination; (2) an ADA claim based upon the theory of retaliatory discharge "for complaining;" and, (3) a claim for denial of medical or worker

compensation benefits. Notably, the complaint does not allege any "complaints" of racial discrimination made by Plaintiff to his employer *before* his discharge, and only alleges what would could best be described as a subjunctive "warning" he gave to Defendants *after his effective discharge date* that "it would be a violation of" the ADA "if he w[ere] terminated as a result of the medical condition he is suffering, as a result of the robbery[.]" (*Id.* at ¶ 11.)[4]

### C.   Procedural Background

This matter came before me for a scheduling conference on July 10, 2017, at which Mr. Colston and Defendants' counsel appeared.  At the conference, the Court determined that in the interest of judicial economy, certain jurisdictional or threshold defenses should be briefed and determined by motion before engaging in full-blown discovery. These affirmative defenses included: (#2) statute of limitations; (#16) *res judicata* and/or collateral estoppel; (#20) subject matter jurisdiction; (#22) failure to allege a claim pursuant to the Americans With Disabilities Act of 1990 (ADA); and (#29) failure to file the complaint within 90

---

[4] Plaintiff also makes passing reference to the fact that "[m]any states now recognize a cause of action for retaliatory discharge of an employee who has filed a worker's compensation claim." (DE 17 at 7.) This argument is undeveloped, and thus waived. *Bishop v. Gosiger, Inc.,* 692 F.Supp.2d 762, 774 (E.D. Mich. 2010) ("It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to put flesh on its bones." (internal quotation marks and citations omitted)).  In any case, no such claim is apparent in his pleadings. The facts as pleaded would also not lend themselves to such a claim, because his worker compensation claim was filed *after* his termination.

days of the EEOC right to sue notice (RTS). To that end, the Court ordered phased

discovery, with Phase I being limited to initial disclosures and the preservation of

certain video evidence, and the second phase to be pursued only in the event that

the case survived the initial round of dispositive motion practice. The scheduling

order specifically provided that, "[I]n the interest of quickly resolving any

jurisdictional dispute … Defendants [must] file any motion to dismiss based on a

jurisdiction issue or affirmative defense Nos. 2, 16, 20, 22 & 29 on or before

**August 10, 2017**." (DE 8 at 2) (emphasis in original). Defendants duly complied

and filed the instant motion to dismiss on August 10, 2017. (DE 13.)  Plaintiff filed

a response and Defendants filed a reply, with the motion being fully briefed on

October 2, 2017. (DEs 17 & 18.)

Defendants' motion seeks dismissal pursuant to Federal Rule of Civil

Procedure 12(b)(1) and (b)(6), and tracks with the affirmative defenses cited

above. The motion should be granted, for the reasons which follow.

### D.    Standard

#### 1.    Standard for Rule 12(b)(1)

To determine whether the Court has subject matter jurisdiction under

Federal Rule of Civil Procedure 12(b)(1), the Court must "take the allegations of

the complaint as true[.]"  *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014).

"When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996); *see also, 3D Systems, Inc. v. Envisiontec, Inc.*, 575 F. Supp. 2d 799, 802 (E.D. Mich. 2008). In reviewing a motion under Rule 12(b), the "court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits." *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003). When faced with a challenge to subject matter jurisdiction, "a court must address that issue before all others." *Cain v. Redbox Automated Retail, LLC*, 981 F. Supp.2d 674, 681 (E.D. Mich. 2013) (collecting cases).

Motions under Rule 12(b)(1) fall into two categories: "facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack challenges "the sufficiency of the pleading itself," and the "court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974)). A factual attack does not challenge the sufficiency of the allegations, but is a "challenge to the factual existence of subject matter jurisdiction," to which "no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear a case." *Id.* (internal citation omitted).

9

### 2.      Standard for Rule 12(b)(6)

When deciding a motion to dismiss under Federal Rule of Civil Procedure

12(b)(6), the Court must "construe the complaint in the light most favorable to

plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605,

608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp.

v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not

contain "detailed factual allegations," but it must contain more than "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action").

Facial plausibility is established "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference

depends on a host of considerations, including common sense and the strength of

competing explanations for the defendant's conduct." *16630 Southfield Ltd.,

P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

### 3.      *Pro Se* Pleadings

Furthermore, the Court holds *pro se* complaints to "less stringent standards

than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520

(1972). However, even in pleadings drafted by *pro se* parties, "'courts should not

have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482

F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594

(6th Cir. 1989)).  Furthermore, "courts may not rewrite a complaint to include

claims that were never presented . . . nor may courts construct the Plaintiff's legal

arguments for him.  Neither may the Court 'conjure up unpled allegations[.]'"

*Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009)

(Ludington, J., adopting report and recommendation of Binder, M.J.).[5]

E.    **Discussion**

1.    **Plaintiff's Title VII and ADA claims are precluded by his
         failure to file within 90 days of the RTS**

a.    **The EEOC charge and the 90-day filing requirement**

A plaintiff wishing to file a private lawsuit seeking relief under Title VII

must obtain a RTS from the EEOC, and then file suit within ninety days after

receiving it.  *Puckett v. Tennessee Eastman Co*., 889 F.2d 1481, 1486 (6th Cir.

1989) ("The Title VII plaintiff satisfies the prerequisites to a federal action (1) by

filing timely charges of employment discrimination with the EEOC, and (2)

receiving and acting upon the EEOC's statutory notice of the right to sue."); *see* 42

U.S.C. §§ 2000e-5(e)(1) and (f)(1).  These requirements also apply to ADA claims.

---

[5] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL
2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's
failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic
pleading requirements, including Rule 12(b)(6).").

*See Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 322 (6th Cir. 2012) (Clay, J., concurring) ("The ADA explicitly cross-references and adopts Title VII's enforcement section, including 'powers, remedies, and procedures.'"); *Mayers v. Sedgwick Claims Mgmt. Servs., Inc.*, 101 F. App'x 591, 593 (6th Cir. 2004) ("[A] plaintiff seeking relief under the ADA must file suit within ninety days of receiving a right-to-sue letter from the EEOC."); *see also* 42 U.S.C. § 12117(a) (adopting Title VII's "powers, remedies, and procedures" for ADA claims).  In order to invoke the EEOC's investigatory powers and obtain such a letter, a charge "shall be filed [with the EEOC] within one hundred and eighty days after the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1).

"In 'deferral states' such as Michigan, a claimant must either file a charge with the EEOC within 180 days after the alleged discrimination occurred, or within 300 days if the claimant has 'initially instituted proceedings with a State or local agency with authority to grant relief from such practice.'" *Fritz v. FinancialEdge Community Credit Union*, 835 F.Supp.2d 377, 383 (E.D. Mich. 2011) (Ludington, J.) (quoting *Lewis v. Harper Hosp.*, 241 F.Supp.2d 769, 771 (E.D. Mich. 2002) (Duggan, J.)).  In this case, Plaintiff initiated his claim with the Michigan Department of Civil Rights (MDCR) on February 2, 2017, and received a RTS from the EEOC indicating that it was mailed to him on February 16, 2017. (DE 1 at 10; DE 13-4, 13-5.)  The RTS is attached to Defendants' motion, and Plaintiff's

12

response (which did take issue with the authenticity of one of Defendant's *other* exhibits) does not take issue with the authenticity of the RTS. Even in a dismissal motion brought under Rule 12, courts may consider documents which were not attached to the pleadings if they were, as here, referenced in the pleadings. (*See* DE 1 at ¶ 13.)  Moreover, under Fed. R. Evid. 201(b)(2), the Court may take judicial notice of a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned[,]" and I do so here, particularly since the RTS is a regularly kept record of the federal government. *See Gumble v. Waterford Twp.*, 171 F. App'x 502, 507 (6th Cir. 2006) (finding that the district Court did not err in failing to convert the motion to dismiss to a motion for summary judgment where "the attachments to which [Plaintiff] refers were referenced in the complaint and were public records . . . ."); *see also Kovac v. Superior Dairy, Inc.*, 930 F.Supp.2d 857, 862-63 (N.D. Ohio 2013) ("EEOC charges and related documents, including right to sue letters, are public records of which the Court may take judicial notice in ruling on a motion to dismiss without having to convert the motion into one for summary judgment.").  In any case, even without review of the document itself, it is undisputed from the respective motion papers of the parties that the "EEOC mailed its Dismissal and Notice of Rights form on February 16, 2017." (DE 17 at 8; DE 13 at ¶ 13.)

The RTS contains important warnings about the deadline for filing suit. On the first page, right above the signature and date, it states:

> **Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act: This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice, or your right to sue based on this charge will be lost….**

(DE 13-5, Pg ID 129) (emphases in original).  Furthermore, on the next page (or reverse side) of the RTS, under the heading "Title VII of the Civil Rights Act, the Americans with Disabilities Act," the document warns, in pertinent part, that:

> In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should keep a record of this date. Once this 90- day period is over, your right to sue based on the charge referred to in this Notice will be lost. *** Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.
>
> Your lawsuit may be filed in the U.S. District Court or a State court of competent jurisdiction.

(*Id*. at Pg ID 130) (emphases in original).

### b.    Presumptive delivery

In order to avoid any confusion or extended litigation (in case after case) over the question of when a RTS has been "received," "[t]he Sixth Circuit has

14

resolved that notice is given, and hence the ninety-day limitations term begins

running, on the fifth day following the EEOC's mailing of an RTS notification to

the claimant's record residential address, by virtue of a presumption of actual

delivery and receipt within that five-day duration, unless the plaintiff rebuts that

presumption with proof that he or she did not receive notification within that

period." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d

552, 557 (6th Cir. 2000) (citing *Banks v. Rockwell Intern. N. Am. Aircraft

Operations*, 855 F.2d 324, 325-27 (6th Cir.1988); *Cook v. Providence Hosp.*, 820

F.2d 176, 179 & n. 3 (6th Cir.1987); *Hunter v. Stephenson Roofing, Inc.*, 790 F.2d

472, 474-75 (6th Cir.1986)).  This five-day delivery presumption is based upon the

fact that, "[t]he Sixth Circuit allots two days for postal delivery of a RTS notice

beyond the three day period allowed by *Federal Rule of Civil Procedure 6(e)*."

*Graham-Humphreys,* 209 F.3d at 557, n.9 (citing *Baldwin Cty. Welcome Ctr. v.

Brown,* 466 U.S. 147, 148 & n.1 (1984) (presuming that a RTS notice was received

by the plaintiff within three days of posting)).  In the case at bar, the RTS is

presumed to have been delivered five days after the February 16, 2017 date of

mailing, *i.e.* by February 21, 2017. It was not a leap year. February 21st is the 52nd

day of the year. The complaint was filed on May 24, 2017, the 144th day of the

year. 144 days, minus 52 days, equals 92 days, two days beyond the deadline for

commencing this action.

### c.    Plaintiff's attempt to rebut the presumption

Here, Plaintiff has attempted to rebut the presumption by attaching the

"affidavit" of his brother, Joseph Colston, to his response brief. (DE 17 at 11.)  In

it, his brother states that the RTS was not received in their mother's mailbox

(apparently the EEOC's address of record) and handed to Plaintiff by his brother

until February 22, 2017, *six* days after the RTS was sent. (DE 17 at 8.)  The

originally scanned and docketed version of this "affidavit" is difficult to read,

particularly with respect to its key components, *i.e.,* form of attesting and the date

of receipt. (*Id.* at 11.)  To be sure that it understood the full contents of this

document, the Court has endeavored to retrieve the original paper copy,

miraculously still available in the Clerk's Office, and had it re-scanned and

attached to this Report and Recommendation as DE 20-1.  Significantly, it does not

meet the requirements for either an affidavit or a declaration (although it comes

"close" to achieving the latter), and thus does not provide acceptable testimony to

rebut the presumption. An affidavit or declaration submitted to support or oppose a

dispositive motion "must be a sworn document or declared to be true under penalty

of perjury. Courts will not ordinarily consider statements that do not meet one of

these two standards." 11 *Moore's Federal Practice* 3d, §56.94[2][a]. *See, e.g.*,

*Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1305-06 (5th Cir. 1988) (affidavit

that was "neither sworn nor its contents stated to be true and correct nor stated

under penalty of perjury" could not be considered as summary judgment proof);

*see also, Demars v. O'Flynn*, 287 F.Supp.2d 230, 242-43 (W.D.N.Y. 2003).

Joseph Colston's affidavit, while claiming that he "swear[s] under the penalty," is

not notarized, has no indication of an oath being given by anyone authorized to

administer oaths, i.e., contains no *jurat*, and is also not stated in the form of a

declaration "under penalty of perjury," as required by statute. *See* 28 USCS §

1746. While it states that it is sworn "under the penalty," it leaves open the

question: "under the penalty of *what*?" [6]

---

[6] Consideration of this "affidavit" raises the question of whether this case ought to be converted from a Rule 12 motion to dismiss to a Rule 56 motion for summary judgment. As to any issue that the Court decides to address under Fed. R. Civ. P. 56, it is important to note that, "[w]here a Rule 12(b)(6) motion to dismiss is converted into a summary judgment motion by acceptance of outside evidence, care must be taken to assure that the nonmoving party is afforded advance notice as required by Rule 56 and an adequate opportunity to show why summary judgment should not be granted." *McDonald v. Seabold*, 780 F.2d 1022 (6th Cir. 1985). However, such concern is not present here. While Rule 12 makes provisions for the "result of presenting matters outside the pleadings[,]" Fed. R. Civ. P. 12(d), the Court need not rely upon Joseph Colston's "affidavit," because the date of the RTS issuance and mailing is not in dispute (DE 17 at 8; DE 13 at ¶ 13), and to the extent the affidavit is considered, the Court only does so only in fairness to and at the request of the Plaintiff. The RTS itself and its date of mailing are directly referenced in the pleadings, and thus may be considered in a Rule 12 motion. *Gumble*, 171 F. App'x at 507. (See DE 1at ¶ 13; DE 6 at 14, Aff. Def. No. 29.) Moreover, the Court's scheduling order specifically permitted motions regarding affirmative defense No. 29, which averred that Plaintiff had failed to file within the 90-day deadline, so Plaintiff was on notice as to the nature of this motion and obviously realized that it might require the submission of facts in response, hence his submission of his brother's "affidavit."

Even if the Court − taking into account Plaintiff's *pro se* status and liberally excusing the technical deficiencies in what appears at best to be an attempted declaration − overlooks the fact that Plaintiff has not properly rebutted the Sixth Circuit's legal presumption of five-day delivery and credits his brother's "affidavit," the one additional day that it affords him still puts the filing of his complaint 91 days out from the claimed date of the RTS's "actual delivery." In other words, without an affidavit to rebut the presumption, the complaint was filed two days too late, and with it, it was filed one day too late.  In either case, the commencement of action was not timely.[7]

Filing a charge with the EEOC is a prerequisite to filing a Title VII and ADA suit in federal court, and compliance with the statutory timeframe after the issuance of a RTS is a statutory requirement. As Defendants correctly point out, "[t]he federal courts have strictly enforced Title VII's 90-day statutory limit." (DE 13 at 21.) "Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants. As stated in *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980), 'in the long run, experience teaches that strict adherence to the procedural

---

[7] Defendants argue that the complaint may have been filed as much as seven days late, because 90 days from the date the RTS was mailed would have been May 17, 2017, a full week before this lawsuit was commenced; however, this calculation does not take into account the Sixth Circuit's five-day delivery presumption.

requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'" *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984). Pursuant to 42 U.S.C. §§ 2000e-5(f)(1), and as Plaintiff was repeatedly warned, a complaint must be filed within 90 days of receipt of the EEOC right-to-sue letter. "In the absence of a recognized equitable consideration, the court cannot extend the limitation period by even one day." *Rice v. New England Coll.*, 676 F.2d 9, 11 (1st Cir. 1982); *see also Diaz v. Ashcroft*, 324 F.Supp.2d 343 (D.P.R. 2004).[8]  In *Fuller v. Michigan Department of Transportation*, 580 F. App'x 416 (6th Cir. 2014), a remarkably similar case decided by the Sixth Circuit just a few years ago, it was undisputed that a Title VII plaintiff filed his complaint 99 days after the presumptive receipt of his RTS from the EEOC, based upon the *Graham-Humphreys* presumption.  *Id.* at 424.  However, the plaintiff sought to overcome the presumption by submitting testimony that he had not actually received the RTS until two weeks after it was mailed.  *Id.*  Based upon this additional time, his 90-day filing deadline expired only one day before his complaint was actually filed in court.  *Id.*  Nevertheless, the Court of Appeals found the claim to be untimely and

---

[8] Defendants' argument that the Court lacks subject matter jurisdiction over this case due to the untimely filing of the complaint is not correct. Instead the 90-day statutory deadline for filing a complaint in federal court after the RTS acts as the Title VII statute of limitations.  *See Minnis v. McDonnell Douglas Tech. Servs. Co.*, 162 F.Supp.2d 718, 729 (E.D. Mich. 2001) ("The 90-day filing mandate, however, is not jurisdictional….'") (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Banks v. Rockwell Int'l N. Am. Aircraft Operations*¸855 F.2d 324, 326 (6th Cir. 1988)).

dismissed it.  *Id.*; *see also, Peete v. American Standard Graphic,* 885 F.2d 331, 331-32 (6th Cir. 1989) (denying Peete's Title VII claims because of a similar 91-day gap between the dates of March 26 and June 25, 1987); *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 38 (2d Cir. 2011) (holding that the plaintiff's ADA claim, initiated 93 days after her presumptive receipt of the right-to-sue letter, is time-barred). The present case is no different.

Moreover, there are no equitable considerations which have been brought to the Court's attention or which would be appropriate to consider in any case. Indeed, the Court itself previously gave Plaintiff a significantly earlier opportunity to timely file his Title VII complaint, well within the 90-day deadline. In the first of the three lawsuits, the Court issued its March 15, 2017 scheduling order, which stated:

> The parties came before me for a scheduling conference on March 14, 2017.  At the conference, Plaintiff indicated that he had recently received a Right to Sue letter from the EEOC and would likely be moving to amend his complaint to add claims under Title VII and for retaliation for having filed a workers compensation claim. ***

> In the interest of quickly resolving the jurisdictional dispute, the Court ordered that Plaintiff file his motion to amend complaint and Defendants file their motion to dismiss based on affirmative defenses 14, 15, and 20 on or before April 13, 2017.

(Case No. 17-10076, DE 17 at 1-2 therein.)  Plaintiff subsequently made a motion to extend the deadline for filing an amended complaint and the Court granted him an extension until April 28, 2017.  (*Id.*, DEs 18 & 20 therein.)  Plaintiff chose not

20

to avail himself of this opportunity.  Had he done so, his complaint could have

been filed well within the 90-day limitations period.  Additionally, the EEOC

warned him in writing that "it is prudent that your suit be filed **within 90 days of**

**the date this Notice was *mailed* to you** (as indicated where the Notice is

signed)…." (DE 13-5, Pg ID 130) (emphases in original).  Had he done that, his

lawsuit would have been filed by May 17, 2017 (90 days from February 16th), *one*

*week before* his complaint was ultimately filed, five days before its due date under

the *Graham-Humphreys* presumption and six days before its due date based on his

own account of when it was actually received. "[E]ven a pro se litigant, whether a

plaintiff or a defendant, is required to follow the law. In particular, a willfully

unrepresented plaintiff volitionally assumes the risks and accepts the hazards

which accompany self- representation." *Graham-Humphreys*, 209 F.3d at 561

(citing *McNeil v. United States*, 508 U.S. 106 (1993)).  Plaintiff's Title VII and

ADA claims should now be dismissed as untimely.

### 2.      Plaintiff's claim for denial of medical benefits is barred

Defendants assert that Plaintiff's remaining claims are barred for lack of

subject matter jurisdiction and because of the exclusive remedy provision of the

Michigan Worker's Disability Compensation Act ("MWDCA").  Defendants'

jurisdictional argument is well-taken.

The MWDCA provides, in relevant part, as follows:

21

> The right to the recovery of benefits as provided in this act shall be the employee's *exclusive remedy against the employer for a personal injury or occupational disease*. The only exception to this exclusive remedy is an intentional tort.   An intentional tort shall exist only when an employee is injured as a result of a *deliberate act of the employer* and the employer specifically intended an injury.

Mich. Comp. Laws § 418.131(1) (emphasis added).   The exclusive remedy provision extends to others employed by the same employer. Mich. Comp. Laws § 418.827(1).   As a result, "a trial court cannot have subject matter jurisdiction until the Workers' Compensation Bureau has determined whether there is a work-related injury" and the Bureau has "sole jurisdiction . . . to determine whether or not any remedy is available." *Mack v. Strategic Materials, Inc.*, 270 F.Supp.2d 934, 939 (E.D. Mich. 2003).

   As background, the MWDCA "essentially created a 'no-fault' system under which a worker no longer has to establish negligence on the part of the employer but the employer is liable for certain expenses related to an injury suffered on the job without regard to fault." *Brown v. Cassens Transp. Co.*, 743 F.Supp.2d 651, 661-62 (E.D. Mich. 2010) (rev'd on other grounds). This "ensures recovery for injured employees while creating greater certainty for employers" in part, because of the exclusive remedy provision of the statute.   Specifically, if it were not the exclusive remedy, "injured employees could circumvent the restrictions the [MWDCA] places on the benefits an injured employee is entitled to receive." *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 732 F.3d 556, 559 (6th Cir. 2013).

22

Here, Plaintiff asserts that he was injured while on the job and that his employer failed to pay for his medical expenses.  This is the specific situation contemplated by the MWDCA.  *See Anderson v. Aramark Facility Servs., LLC*, No. 16-cv-12398, 2017 WL 1549762, at *6 (E.D. Mich. May 1, 2017).  His pleadings do not contend, or even suggest, that Defendants committed an intentional tort against him, and thus are not subject to the statutory exception. Specifically, his complaint describes a robbery that occurred at his place of work and the injury he suffered when attempting to escape.  He does not posit that his employer intended for him to be injured or committed a deliberate act in support of the same.  His main issue with his employer and fellow employee, Sarah Prinzi, is that they did not pay for the expenses incurred for his work-related injury.

Moreover, his complaint explicitly refers to his "workman compensation package" and his "workman[s'] compensation adjuster," with whom he spoke on December 23, 2016.  (DE 1 at ¶¶ 5-6.)  Accordingly, I conclude that this Court lacks subject matter jurisdiction over Plaintiff's claims and recommend that the Court grant Defendants' motion and dismiss this claim without prejudice to refiling in the appropriate jurisdiction and tribunal.

### 3.    Other bases for dismissal raised by Defendants

Because I have concluded that Plaintiff's employment claims are time-barred and that this Court is without subject matter jurisdiction as to his medical

expense/workers compensation claim, it is unnecessary to rule on the merits of the former and improper to rule on the merits of the latter. *Godsey v. Miller,* 9 F. App'x 380, 384 (6th Cir.2001) ("[W]ithout subject-matter jurisdiction, the court was without power to decide any substantive motion on the merits of the case."). I do note, however, that this is the second time the Court has taken up the issue of his medical expenses in a case filed by this Plaintiff against these Defendants. In the first of his three related cases, Case No. 17-10076, I recommended dismissal on this basis and my recommendation was adopted. (See DEs 32 & 34 therein.) In the second of his cases, Case No. 17-10084, the worker compensation carrier was let out on the same basis when Plaintiff failed to show cause why the case should not be dismissed. (See DEs 15 & 17 therein.) Therefore, I agree with Defendants that the claims for "medical benefits" are also barred by the doctrines of *res judicata* and/or collateral estoppel.

Finally, there is no need for the Court to consider Defendants' argument that Plaintiff's claims are also barred by the six-month limitation period contained in his employment application. If the Court agrees that none of his claims survive, based on the above analysis, there is no need to take up the contractual limitations argument. That argument is potentially problematic for two reasons in any case: first, because the EEOC has exclusive jurisdiction while the charge is pending, *Fritz,* 835 F. Supp. 2d at 383, which could potentially make the contractual

limitations period unenforceable or have the effect of tolling the contractual

limitations period for certain claims, *see Logan v. MGM Grand Detroit Casino*,

No. 4:16-CV-10585, DE 51 therein (Report and Recommendation to Grant

Defendants' Motion for Summary Judgment) (collecting cases) (E.D. Mich. Feb.

12, 2012); and, second, because Defendants admit in their reply brief that the

employment application attached to their initial brief related to the wrong person.

(DE 18 at 3.)  They did not attach an affidavit or declaration to authenticate the

correct application, and even if they had, arguments raised for the first time in a

reply brief are not appropriately considered. *Sundberg v. Keller Ladder*, 189

F.Supp.2d 671, 682-83 (E.D. Mich. 2002) ([I]t is not the office of a reply brief to

raise issues for the first time.") (citing *United States v. Perkins*, 994 F.2d 1184,

1191 (6th Cir, 1993)).

## F.    Conclusion

Plaintiff had ample time in which to file his complaint alleging Title VII and

ADA violations, including an invitation (and then an extended invitation) from this

Court to add employment claims by way of amended pleadings in a previous case.

He nonetheless filed his complaint two days late (or one day late, if the Court

accredits an unsworn "affidavit").  He also insists on repeatedly filing work-related

medical expense/worker compensation claims here, despite being informed by this

Court's previous opinions that it lacks jurisdiction over such claims. For the

reasons set forth above, Defendants' motion to dismiss (DE 13) should be

**GRANTED,** Plaintiff's medical payment and workers compensation claims should

be **DISMISSED without prejudice** to their being pursued <u>in the proper tribunal</u>,

and all other claims should be **DISMISSED with prejudice**.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated: February 14, 2018          s/Anthony P. Patti_____
                                  Anthony P. Patti
                                  UNITED STATES MAGISTRATE JUDGE


## Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record
on February 14, 2018, electronically and/or by U.S. Mail.

                                  s/Michael Williams_____
                                  Case Manager for the
                                  Honorable Anthony P. Patti

27